**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAMARIUS CARTER,

                              Petitioner,

          v.                                                    **9:10-cv-552**
                                                                **(MAD)**

SUPERINTENDENT,

                              Respondent.

---

APPEARANCES:                          OF COUNSEL:

**DAMARIUS CARTER**
**03-B-0581**
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118
Petitioner *pro se*

**OFFICE OF THE NEW YORK**          **PAUL B. LYONS, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent


**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 5, 2003, petitioner *pro se* pled guilty in Onondaga County Court to (1)

Attempted Murder in the Second Degree, (2) Assault in the First Degree, (3) Criminal Use of a

Firearm in the First Degree, (4) Attempted Robbery in the First Degree, and (5) Criminal

Possession of a Weapon in the Second Degree.  Petitioner was sentenced to concurrent

determinate prison terms of thirteen-years' incarceration, to be followed by five years of post-

release supervision.

Currently before the Court is petitioner's May 11, 2010 habeas corpus petition in which

he asserts that his state-court conviction was the product of various constitutional violations.

## II. BACKGROUND

On August 30, 2002, in Syracuse, New York, petitioner shot Andrew Cosby, causing

injury to Mr. Cosby's spine.  An Onondaga County grand jury indicted petitioner for Attempted

Murder in the Second Degree, Assault in the First Degree, Criminal Use of a Firearm in the First

Degree, Attempted Robbery in the First Degree, and Criminal Possession of a Weapon in the

Second Degree.  *See* Dkt. No. 10-1 at 14-15.

At a hearing on December 23, 2002, before Onondaga County Court Judge William D.

Walsh, petitioner pled guilty to all of the charges in the indictment in return for an agreement that

the court would sentence him to no more than thirteen-year concurrent terms of incarceration on

each count, with five-years post-release supervision.  *See id.* at 95-99, 106-07.  At the hearing,

after acknowledging that he was pleading guilty "freely and voluntarily," that he had not been

threatened or forced to enter the plea, and that he understood all of his rights, petitioner formally

pled guilty.  *See id.* at 103-06.  Petitioner allocuted to each count of the indictment, including

that, "on or about the 30th day of August, 2002, in the City of Syracuse . . . [petitioner]

intentionally attempted to cause the death of Andrew Cosby by shooting him in the head and

spine with a handgun."  *See id.*

On March 5, 2003, the court sentenced petitioner to thirteen-years' imprisonment, to be

followed by five years of post-release supervision.  *See id.* at 117.  At sentencing, petitioner

signed a written waiver of appeal.

        After having exhausted his state-court remedies, petitioner filed the petition currently

before the court.


## III. DISCUSSION[1]

### A.      Standard of review

        The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought

about significant new limitations on the power of a federal court to grant habeas relief to a state

prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit

noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), *cert. granted, judgment vacated and*

*cases remanded on other grounds by* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of the
> facts in light of the evidence presented in the State court
> proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403

F.3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.

2003) (quotation omitted).

        In providing guidance concerning the application of this test, the Second Circuit has

---

[1] Respondent concedes that the petition is timely and that petitioner fully exhausted all of
his claims currently before the Court.  *See* Dkt. No. 8 at 10-12.

observed that

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did. [*Williams v.
> Taylor*, 529 U.S. 362] at 405-06, 120 S. Ct. 1495 [(2000)]; *Loliscio
> v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001) . . . . [A] state court's
> decision is an "unreasonable application of" clearly established
> federal law if the state court "identifies the correct governing legal
> principle from [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts" of the case before it. *Williams*,
> 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d

147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409

(2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). Courts

have interpreted "objectively unreasonable" in this context to mean that "'some increment of

incorrectness beyond error'" is required for the habeas court to grant the application. *Earley v.

Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

A state court determines a petitioner's federal claim "on the merits" and triggers the

highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on

the merits,' and (2) reduces its disposition to judgment." *Sellan*, 261 F.3d at 312 (quotation

omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular

federal claim or to relevant federal case law. *See id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits,"

the state-court's decision is not entitled to AEDPA deference; and, instead, the federal habeas

court must apply the pre-AEDPA standard of *de novo* review to the state-court's disposition of

the federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v.

Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).[2]

**B.      Petitioner's prosecutorial misconduct and *Brady* claims[3]**

Petitioner contends that the prosecutor violated his obligation under *Brady v. Maryland*,

373 U.S. 83 (1963), by withholding Mr. Cosby's hospital Discharge Summary. *See* Dkt. No. 1 at

10. Specifically, petitioner claims that his guilty plea was a "fraud upon . . . the court," because

the "University Hospital Discharge Summary" stated that "the patient got shot in the left

shoulder," while petitioner "pled guilty to shoot[ing] him in the head." *See id.* at 6-7. As such,

petitioner asserts that these medical records show that Mr. Cosby was actually shot in the left

shoulder and, therefore, petitioner could not have properly been charged with attempted murder

because Mr. Cosby "was never put in a life threatening condition[.]" *See id.* at 10.[4]

---

[2] Although it is clear that the state court adjudicated petitioner's ineffective assistance claim on the merits, it is not clear whether it reached the merits, or even considered, petitioner's *Brady* and prosecutorial misconduct claims. As such, the Court will apply the pre-AEDPA standard to petitioner's *Brady* and prosecutorial misconduct claims.

[3] Since the prosecutorial misconduct claim stems from the alleged *Brady* violation, the Court will address them together.

[4] "'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Lefkowitz v. Newsome*, 420 U.S. 283, 295 (1975) (quotation omitted). Thus, some "[f]ederal

(continued...)

Suppression by the prosecution of evidence favorable to the accused violates due process

when the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution. *See Brady*, 373 U.S. at 87. Thus, petitioner's *Brady* claim requires

him to show that (1) evidence has been suppressed; (2) the withheld evidence is favorable to him;

and (3) he was prejudiced. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Evidence is suppressed if it is known to the prosecution but not known to the defense,

*United States v. Agurs*, 427 U.S. 97, 103 (1976), and the "prosecution" includes any law

enforcement agency investigating the case, *Kyles v. Whitley*, 514 U.S. 419, 438-39 (1995).

Evidence is favorable to the accused if it tends to exculpate the accused or can be used as

impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (citation

omitted). An accused is prejudiced if the evidence is material; that is, if "there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different." *Id.* at 682. "In the context of an attack on the validity of a plea,

evidence is considered material where 'there is a reasonable probability that, but for the failure to

---

⁴(...continued)
district courts have held that a valid guilty plea waives any subsequent *Brady* claim brought in a
federal habeas petition." *Dunn v. Senkowski*, No. 9:03CV0364, 2007 WL 2287879, *13
(N.D.N.Y. Aug. 7, 2007) (citations omitted); *see also Gayle v. Lacy*, No. 95-CV-633, 1997 WL
610654, *8 (N.D.N.Y. Oct. 1, 1997) (holding that, "[b]y entering a guilty plea and admitting to
each and every factual element of the charge, petitioner waived his right to assert that his rights
had been violated by the prosecution's failure to disclose *Brady* material"). The Court notes that
some district courts within this Circuit have opined that an individual's right to receive *Brady*
material cannot be waived, notwithstanding the existence of a valid guilty plea. *See United
States v. Sapia*, No. 02 CIV 649, 2002 WL 620483, *9 n.4 (S.D.N.Y. Apr. 18, 2002) (citation
omitted), *remanded on other grounds*, 108 Fed. Appx. 661 (2d Cir. 2004); *Brown v. Berbary*,
No. 01-CV-6500, 2004 WL 1570258, *4-5 (W.D.N.Y. June 16, 2004). Since there is authority in
this Circuit standing for the proposition that a petitioner's *Brady* claim is not foreclosed by a
valid guilty plea, the Court will consider petitioner's *Brady* claim on the merits.

produce such information, the defendant would not have entered the plea, but instead would have

insisted on going to trial.'" *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998)

(quotation and other citation omitted).  This is a question of "'the likely persuasiveness of the

withheld information,'" not the defendant's subjective position.  *See id.* (quotation omitted).  The

significance of the withheld evidence is assessed in light of the entire record.  *See Agurs*, 427 U

.S. 97 at 112; *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004).

Contrary to petitioner's assertions, he has failed to set forth a *Brady* claim.  Even

assuming that the prosecution withheld the Discharge Summary, petitioner has failed to establish

that the evidence was either favorable to him or that he was prejudiced.  Although the Discharge

Summary did state that Mr. Cosby was shot in the shoulder, it went on to provide that "[a] C

spine series showed a bullet fizzle around C2, C3.  T and C spine showed a right C2 comminuted

laminar fracture with a small segment slightly displaced into the canal with no cord compromise.

It also showed the bullet adjacent to the right C2 vertebra."  *See* Dkt. No. 1 at 28.

A "comminuted" fracture is "a fracture in which the bone is broken into more than two

fragments."  *Stedman's Medical Dictionary*, 27th ed. (2000).  The C1 vertebra is the topmost

vertebra, and, along with the C2 vertebra, it forms the joint connecting the skull and the spine.

*See Disabled World*, http://www.disabled-world.com/artman/publish/spine_picture.shtml (last

visited April 27, 2011).  Therefore, the Discharge Summary provided that the victim was shot

and that the bullet fractured the vertebra where the skull connects to the spine.

Under New York law, to support petitioner's conviction of Attempted Murder in the

Second Degree, the prosecution had to prove that petitioner acted with the intent to cause the

death of another person, and engaged in conduct which tended to effect the commission of such

crime.  *See* N.Y. Penal Law §§ 110.00, 125.25(1).  Clearly, the Discharge Summary does not create doubt that petitioner acted with the intent necessary to support a conviction for Attempted Murder in the Second Degree.  *See People v. Walker*, 279 A.D.2d 696, 697-98 (3d Dep't 2001) (finding that a gunshot wound to the arm and spine was sufficient to support a conviction for Attempted Murder in the Second Degree).

Moreover, even assuming that the evidence was "favorable," relief is warranted only if "'there is a reasonable probability [that,] but for the failure to produce such information[,] [petitioner] would not have entered the plea but instead would have insisted on going to trial.'" *Avellino*, 136 F.3d at 256 (quotation omitted).  Petitioner cannot show any such "reasonable probability."  In fact, when taken as a whole, and as detailed above, the Discharge Summary is more damaging to petitioner than it is helpful.

To the extent that petitioner relies on the alleged *Brady* violation to assert a prosecutorial misconduct claim, his claim clearly fails to establish the "'egregious misconduct'" necessary to give rise to a constitutional claim.  *Miranda v. Bennett*, 322 F.3d 171, 181 (2d Cir. 2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).

Finally, although guilty pleas are "valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences,'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quotation omitted), petitioner presents no factual basis or support for a contention that his plea was involuntary or unknowing.  In fact, liberally construed, petitioner's only argument in support of this claim is that he would not have pled guilty had he been provided with Mr. Cosby's Discharge Summary.  As discussed, this evidence

is more condemning than exculpatory and, therefore, not a basis to conclude that petitioner was

unaware of the relevant circumstances of the charged offense and its consequences.

Based on the foregoing, the Court denies the petition on this ground.


**C.      Petitioner's ineffective assistance of counsel claim[5]**

Petitioner claims that his trial counsel was ineffective because he failed "to i[n]vestigate

the matter and examine the medical records."  *See* Dkt. No. 1 at 7.  Specifically, petitioner claims

that had his trial counsel reviewed all pre-trial discovery, he would have discovered that Mr.

Cosby was not shot in the head, but in the shoulder.  *See id.* at 11.  Petitioner claims that, had his

attorney discovered this information or fully apprized him of it, he would not have pled guilty to

"a faulty indictment," and, in fact, the attempted murder charge would not have "been legally

submitted to a grand jury."  *See id.*[6]

---

[5] Petitioner asserted the claims alleging ineffective assistance of counsel that are presently
before the court in his second motion brought pursuant to New York Criminal Procedure Law §
440.10.  *See* Dkt. No. 10-16 at ¶¶ 10, 13-15, 17, 20-23.  Judge Walsh denied the claim as
procedurally barred, but also stated that the "court previously determined in denying the
defendant's last *Criminal Procedure Law § 440* motion that his claim of ineffective assistance of
counsel was affirmatively contradicted by his plea colloquy, wherein he stated under oath that he
was satisfied with his attorney's representation, and he also freely admitted to the criminal
conduct alleged in the indictment."  *See* Dkt. No. 1 at 23.  The Fourth Department denied leave to
appeal without explanation.  *See id.* at 24.  As such, the court must determine whether Judge
Walsh's denial of petitioner's claim was contrary to clearly established federal law.  *See Levine v.
Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) (citation omitted).

[6] To the extent that petitioner claims that the indictment was "faulty" or constituted a
"fraud upon . . . the Court," petitioner appears to be alleging that there was an impermissible
variance between what the indictment charged and what the evidence established.  "'A variance
arises when the evidence adduced at trial establishes facts difference from those alleged in an
indictment.'" *United States v. LaSpina*, 299 F.3d 165, 182-83 (2d Cir. 2002) (quotation omitted).
To obtain relief, the defendant must establish that "the variance resulted in 'substantial

(continued...)

Under the standard that the Supreme Court promulgated in *Strickland v. Washington*, 466

U.S. 688 (1984), a defendant is required to demonstrate two elements in order to state a

successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below

an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

688, 694.  To establish an ineffective assistance claim within the context of a guilty plea, a

petitioner must show that his counsel's constitutionally ineffective performance affected the

outcome of the plea process such that "there is a reasonably probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

*Lockhart*, 474 U.S. 52, 56 (1985).  The habeas petitioner bears the burden of establishing both

deficient performance and prejudice.  *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir.

2004) (citation omitted).

"A defendant who pleads guilty unconditionally while represented by counsel may not

assert independent claims relating to events occurring prior to the entry of the guilty plea.  'He

may only attack the voluntary and intelligent character of the guilty plea by showing that the

---

[6](...continued)
prejudice[.]'" *Id.* at 183 (quotation omitted).

In the present matter, it is clear that there was no material variance between the
Attempted Murder in the Second Degree count as set forth in the indictment and the evidence
before the Court.  The indictment charged that petitioner shot Mr. Cosby in "the head and neck,"
while the Discharge Summary provided that Mr. Cosby was shot in the shoulder and that the
bullet fractured the C2 vertebra.  It is clear that petitioner was given notice of the "'core of
criminality' to be proven at trial," and that any differences between the indictment and the
Discharge Summary were not "material." *Muller v. Senkowski*, 6 Fed. Appx. 58, 60 (2d Cir.
2001) (quotation and other citation omitted).  Moreover, even if the variance was "material,"
petitioner has failed to show that he suffered "'substantial prejudice.'" *LaSpina*, 299 F.3d at 183
(quotation omitted).

advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*,

76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct.

1602, 36 L. Ed. 2d 235 (1973)).

Here, the record establishes that petitioner readily admitted his culpability for the

shooting of Mr. Cosby.  The trial court made certain to obtain confirmation that petitioner had

consulted with his attorney before pleading guilty and was fully satisfied with counsel's

performance.  As discussed above, these facts demonstrate the knowing and voluntary nature of

his guilty plea and lack of substance to his attacks on trial counsel.

Even assuming, *arguendo*, that petitioner is not precluded from asserting claims that

relate to matters that occurred before he pleaded guilty, the Court finds that these aspects of his

ineffective assistance claim are nevertheless without substance.  Particularly lacking on the

present record is any indication of prejudice to petitioner as a result of counsel's representation.

As the county court found in his first motion brought pursuant to New York Criminal Procedure

Law § 440.10,

> [d]efense counsel negotiated a favorable plea bargain for
> [petitioner], limiting [petitioner's] overall sentencing exposure to a
> 13 year determinate term of imprisonment, down from the 15 year
> determinate term sought by the People in return for a guilty plea.
> Additionally, had [petitioner] been convicted after trial on all
> counts contained in the indictment, he would have faced a[n]
> aggregate maximum determinate term of 25 [years], and possibly a
> much greater term if the proof at trial had warranted the imposition
> of consecutive sentences on the counts of Attempted Robbery in
> the First Degree and Criminal Possession of a Weapon in the
> Second Degree.

*See* Dkt. No. 10-5 at 2-3.

Considering the strength of the case that he was facing, the inculpatory nature of the

-11-

Discharge Summary he now mistakenly claims was in fact exculpatory, and the length of sentence he was facing if convicted after trial, it cannot be said that, but for counsel's alleged errors, petitioner would have insisted on proceeding to trial; and, therefore, petitioner has failed to establish that he was prejudiced by counsel's alleged failures. *See Hill*, 474 U.S. at 56.

Based on the foregoing, the Court finds that the state court's decision that petitioner's counsel provided him with effective assistance of counsel was not contrary to or an unreasonable application of clearly established federal law.

## D.  Certificate of appealability

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[7]  28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since petitioner has failed to make such a showing, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

---

[7] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that petitioner's petition for a writ of habeas corpus is **DENIED** and

**DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of

petitioner's claims.

**IT IS SO ORDERED.**

Dated:  April 29, 2011
            Albany, New York

Mae A. D'Agostino
U.S. District Judge